**No. 18-15919**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

CRIMINAL PRODUCTIONS, INC., a Nevada corporation,

*Plaintiff-Appellant*,

v.

TRACY CORDOBA, an individual

*Defendant-Appellee*.

On Appeal from the United States District Court
for the District of Nevada
No. 2:16-cv-02704-JCM-PAL
Hon. James C. Mahan

_____

**APPELLEE'S ANSWERING BRIEF**

_____

I. Scott Bogatz, Esq. (NV Bar No. 3367)
Kerry E. Kleiman, Esq. (NV Bar No. 14071)
**REID RUBINSTEIN & BOGATZ**
300 South 4th Street, Suite 830
Las Vegas, Nevada 89101
Telephone: (702) 776-7000
kkleiman@rrblf.com
*Attorneys for Appellee Tracy Cordoba*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ............................................................................ 1

ISSUES PRESENTED ...................................................................... 4

STATEMENT OF THE CASE ........................................................... 5

SUMMARY OF THE ARGUMENT .................................................. 11

ARGUMENT .................................................................................. 13

I.     THE COPYRIGHT ACT AND SUPREME COURT PRECEDENT
REQUIRE THE CONCLUSION THAT MS. CORDOBA IS A
PREVAILING PARTY FOR THE PURPOSE OF FEE-SHIFTING
PURSUANT TO 17 U.S.C. § 505 .............................................. 15

A.    Standard Of Review ............................................................. 16

B.    *CRST* Acknowledged That A Plaintiff Is The Only Party In An Action
Seeking A Material Alteration Of The Legal Relationship, Thus Applying
The *Buckhannon* "Material Alteration" Test To Defendants Is Inequitable.16

1.    Prior to *CRST*, the relevant case law focused on Plaintiffs ........................... 19

2.    *CRST*, when read in conjunction with *Kirtsaeng*, requires the conclusion that
the purposes of the Copyright Act are furthered by allowing defendants to be
deemed "prevailing parties" even when they are voluntarily dismissed ....... 21

3.    In the limited context of a defendant's prevailing party status under the
Copyright Act, this Circuit should revert to the standard set forth in
*Corcoran v. Columbia Broadcasting System, Inc.*, to be in line with *CRST*
and *Kirtsaeng* .......................................................................... 23

II.    THE DISTRICT COURT BELOW PROPERLY APPLIED THE LAW
WHEN GRANTING MS. CORDOBA'S MOTION FOR ATTORNEYS'
FEES AND RELATED EXPENSES ....................................... 27

i

A.      Standard Of Review.........................................................................27

B.      The Court's Discretion To Award Attorneys' Fees Is Intentionally Broad And Need Only Be Based On The Totality Of The Circumstances And The Essential Goals Of The Copyright Act .........................................................28

III.    EVEN IF THIS COURT DOES NOT BELIEVE THAT *CRST* EFFECTIVELY OVERRULED *CADKIN*, THE DISTRICT COURT SHOULD NONETHELESS BE AFFIRMED BECAUSE THE AWARD IS SUPPORTED BY THE RECORD AND THEREFORE DOES NOT CONSTITUTE REVERSIBLE ERROR .......................................................32

A.      Standard Of Review.........................................................................32

B.      Even If This Court Maintains The Holding In *Cadkin*, Ms. Cordoba Should Nonetheless Be Deemed A Prevailing Party ...................................................33

1.      This Circuit has determined that a nearly-identical BitTorrent Complaint failed to state a claim, effectively precluding Criminal from refiling its action against Ms. Cordoba ...........................................................33

C.      Even If She Is Not A Prevailing Party, Ms. Cordoba Is Still Entitled To Fees Under FRCP 68....................................................................35

IV.     FRCP 41(A)(1) CANNOT FUNCTION AS AN AUTOMATIC BAR TO ATTORNEYS' FEES .................................................................36

CONCLUSION .................................................................38

STATEMENT OF RELATED CASES ..................................................39

CERTIFICATE OF COMPLIANCE.....................................................40

CERTIFICATE OF SERVICE ..........................................................41

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,*
  421 U.S. 240, 95 S. Ct. 1612 (1975). ...........................................................37

*Bridgeport Music, Inc. v. WB Music Corp.*,
  520 F.3d 588 (6th Cir. 2008). ......................................................................29

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*,
  532 U.S. 598, 121 S. Ct. 1835 (2001). ..... 4, 16, 17, 19, 20, 21, 23, 24, 26, 36

*Cadkin v. Loose*,
  569 F.3d 1142 (2009). .......................... 3, 4, 10, 11, 12, 19, 21, 24, 25, 26, 33

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
  862 F.3d 951 (9th Cir. 2017). ......................................................................32

*Cigna Property and Cas. Ins. Co. v. Polaris Pictures Corp.*,
  159 F.3d 412 (9th Cir. 1998). ......................................................................33

*Cobbler Nevada, LLC v. Gonzales*,
  901 F.3d 1142 (2018). .................................................................... 2, 33, 34

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384, 110 S. Ct. 2447 (1990). ..........................................................15

*Corcoran v. Columbia Broadcasting System, Inc.*,
  121 F.2d 575 (9th Cir. 1941) ................................................................. 24, 26

*Countryman Nevada, LLC v. DOE*,
  193 F. Supp. 3d 1174 (D. Or. 2016). ............................................................29

*CRST Van Expedited, Inc. v. E.E.O.C.*,
  136 S.Ct. 1642 (2016)...... 2, 3, 4, 9, 10, 11, 12, 16, 17, 18, 19, 20, 21, 23, 25, 26, 27, 32

*Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*,
  122 F.3d 1211 (9th Cir. 1997). ......................................................................16

iii

*Equal Employment Opportunity Comm'n v. CRST Van Expedited, Inc.*,
    277 F. Supp. 3d 1000 (N.D. Iowa 2017). ......................................................19

*Estate of Diaz v. City of Anaheim*,
    840 F.3d 592 (9th Cir. 2016). .........................................................................28

*Ets-Hokin v. Skyy Spirits, Inc.*,
    323 F.3d 763 (9th Cir. 2003). .........................................................................30

*Flight Attendants v. Zipes*,
    491 U.S. 754, 109 S.Ct. 2732 (1989). ...........................................................20

*Fogerty v. Fantasy Inc.*,
    510 U.S. 517 (1994)...................................................... 12, 17, 18, 29, 31, 32

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
    866 F.2d 1545 (9th Cir. 1989). .......................................................................28

*Glacier Films (USA), Inc. v. Turchin*,
    896 F.3d 1033 (9th Cir. 2018). .......................................................................13

*Hanrahan v. Hampton*,
    446 U.S. 754 (1980).........................................................................................25

*Haworth v. Nevada*,
    56 F.3d 1048 (9th Cir. 1995). .........................................................................35

*Hensley v. Eckerhart*,
    461 U.S. 424, 437 (1983). ................................................................................3

*Hewitt v. Helms*,
    482 U.S. 775 (1987).........................................................................................24

*Hung Lam v. City of San Jose*,
    869 F.3d 1077 (9th Cir. 2017). .......................................................................28

*Kirstaeng v. John Wiley & Sons, Inc.*,
    136 S.Ct. 1979 (2016)..2, 3, 11, 12, 17, 18, 20, 21, 22, 23, 25, 26, 28, 29, 32, 37

*LHF Prods., Inc. v. Boughton*,
    299 F. Supp. 3d 1104 (D. Nev. 2017). ...........................................................14

iv

*Maljack Productions, Inc. v. GoodTimes Home Video Corp.*,
    81 F.3d 881 (9th Cir. 1996). ..........................................................28

*Marek v. Chesny*,
    473 U.S. 1 (1985)...........................................................................35

*Oscar v. Alaska Dep't of Educ. & Early Dev.*,
    541 F.3d 978 (9th Cir. 2008). ........................................................24

*Ryan v. Editions Ltd. W., Inc.*,
    786 F.3d 754 (9th Cir. 2015). ........................................................27

*Shame On You Prods., Inc. v. Banks*,
    893 F.3d 661 (9th Cir. 2018). ............................................... 16, 27

*Smith v. Jackson*,
    84 F.3d 1213 (9th Cir. 1996). ........................................................27

*The Traditional Cat Ass'n, Inc. v. Gilbreath*,
    340 F.3d 829 (9th Cir. 2003). ........................................................27

*Third Degree Films v. Does 1-47*,
    286 F.R.D. 188 (D. Mass. 2012). ..................................................13

*United States v. $32,820.56*,
    838 F.3d 930 (8th Cir. 2016). ........................................................19

*United States v. Trident Seafoods Corp.*,
    92 F.3d 855 (9th Cir. 1996). ..........................................................35

*Viva Video, Inc. v. Cabrera*,
    9 Fed. Appx. 77 (2d Cir. 2001).....................................................29

*Wood v. Burwell*,
    837 F.3d 969 (9th Cir. 2016). ........................................................19

**Statutes**

17 U.S.C. § 505 ................................ 1, 4, 9, 10, 11, 12, 14, 16, 22, 25, 26, 30, 35, 37

28 U.S.C. § 2072(b). ...................................................................37

**Rules**

Fed. R. Civ. P. 12 ..............................................................................7, 22

Fed. R. Civ. P. 21 ..................................................................................7

Fed. R. Civ. P. 26 ..................................................................................8

Fed. R. Civ. P. 41 ............................................ 2, 10, 11, 15, 22, 27, 36, 37

Fed. R. Civ. P. 60 ................................................................................11

Fed. R. Civ. P. 68 ....................................................................... 10, 13, 35

**Treatises**

5 Melville B. Nimmer and David Nimmer,
      Nimmer on Copyright § 14.10[D][1] (2015)......................................... 29, 32

6 J. Moore,
      Federal Practice 54.77(2), pp. 1712—1713 (2d ed. 1974)............................37

# INTRODUCTION

Appellant, Criminal Productions, Inc. ("Criminal"), sued Appellee, Ms. Tracy Cordoba, and more than a dozen other defendants for allegedly infringing on Criminal's copyright by using a BitTorrent program to download an unauthorized copy of the fittingly eponymous film onto her computer. Ms. Cordoba did not know what BitTorrent was, but she did know that she did not commit the infringement that Criminal alleged. Ms. Cordoba trusted that the legal system, the Federal Rules of Civil Procedure ("FRCP" or the "Rules"), and the fee-shifting provision of 17 U.S.C. § 505 to protect her. Rather than paying a nuisance settlement to a bully, Ms. Cordoba retained counsel to help her zealously defend against allegations that she knew to be untrue. Ms. Cordoba was able to make this courageous decision because the law told her that she could be relieved of her burdensome attorneys' fees once she inevitably prevailed.

Criminal took every action it could to increase the cost of Ms. Cordoba's defense. Rather than bowing to the financial pressure put on her from a multi-million-dollar production company and paying a nuisance settlement, Ms. Cordoba fought on, secure in the knowledge that she had done nothing wrong and trusting that the court would restore the status *quo ante* and she would recover her attorneys' fees once she was dismissed or had judgment entered in her favor.

1

What Ms. Cordoba did not know was that Criminal would attempt to avoid recompense by voluntarily dismissing her pursuant to FRCP 41(a)(i) merely one week before the parties would first appear in court.

Ms. Cordoba again trusted the fairness of the judicial system and moved for an award of her costs and fees, relying on two 2016 Supreme Court Decisions—*CRST Van Expedited, Inc. v. E.E.O.C.*,[1] and *Kirtsaeng v. John Wiley & Sons, Inc.*[2]—that allowed the district court to exercise its broad discretion to determine that she had prevailed against Criminal by achieving her desired outcome: dismissal of the case against her.[3]

Over Criminal's vehement—and, to this day, continuing—objections, the district court agreed with Ms. Cordoba. The district court's decision that Ms. Cordoba was a prevailing party was in line with *CRST*, *Kirtsaeng*, the goals of the Copyright Act, the authority and purpose of the Federal Rules of Civil Procedure, and fundamental fairness. Without the district court's decision, Ms. Cordoba would

---

[1] 136 S.Ct. 1642 (2016).

[2] 136 S.Ct. 1979 (2016).

[3] In light of this Court's recent decision in *Cobbler Nevada, LLC v. Gonzales*, Criminal arguably cannot now bring the same claims against Ms. Cordoba without running afoul of binding Circuit precedent. 901 F.3d 1142, 1144 (2018) (being the registered subscriber of an IP address observed in a BitTorrent swarm failed to state a claim for direct or contributory infringement as a matter of law).

have been left without recourse despite having been dragged into litigation by a plaintiff who was gaming the system. Without the district court's decision, Ms. Cordoba would have received nothing for defending her innocence at great financial expense.

Despite a significant body of case law that expressly states that fee awards "should not result in a second major litigation," *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), Criminal now seeks to have this Court reverse the district court's ruling and sign off on its coercive (and arguably extortionary) litigation tactics.

According to Criminal, *Cadkin v. Loose*[4] created the absolute right for a plaintiff to circumvent the Copyright Act's fee-shifting provision by strategically dismissing a defendant pursuant to FRCP 41(a)(i) before any substantive judicial pronouncement. That is patently unjust and simply cannot be the state of the law after *CRST* and *Kirtsaeng*.

Ms. Cordoba continues to place her faith in the fairness of the legal system. On her civil servant's salary, she is the proverbial David squaring off against a Goliath with tens, if not hundreds, of millions of dollars at its disposal. The district court's order was well-founded and based in both reason and fairness.

Accordingly, Ms. Cordoba respectfully requests that this Circuit affirm the district court's decision and conclude that: (1) she is eligible for an award of costs

---

[4] 569 F.3d 1142 (2009).

and fees as a prevailing party under 17 U.S.C. § 505, and (2) that the district court's award was well within its broad discretion.

## ISSUES PRESENTED

1.     In *CRST Van Expedited, Inc. v. E.E.O.C.*, the United States Supreme Court held that a prevailing party analysis for a defendant is necessarily different from the analysis for a plaintiff, given their different litigation objectives. In *Cadkin v. Loose*, this Circuit adopted the "material alteration" test that the Supreme Court had announced in *Buckhannon*[5] and applied it to a defendant in a copyright infringement action. The *Buckhannon* material alteration test was created to determine whether a plaintiff could be considered a "prevailing party" for a fee award. In light of the *CRST* holding, is the *Buckhannon* material alteration test still appropriately applied to defendants?

2.     Did the district court abuse its discretion by considering Appellant's litigation tactics, which it concluded were "unreasonable" as to Appellee and designed to increase the cost of Appellee's defense, when deciding to award costs and fees pursuant to 17 U.S.C.§ 505?

3.     Appellee was dismissed from the underlying litigation after serving Appellant with an Offer of Judgment, which Appellant rejected and failed to beat.

---

[5] *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 605, 121 S. Ct. 1835, 1840 (2001).

The statute of limitations against Appellee will expire in a few short months. Since Appellee was dismissed, this Circuit has published a decision finding a nearly-identical complaint was insufficient as a matter of law. In light of these additional facts, if the district court committed any error, does such error require reversal?

4. Statutory attorneys' fees are a substantive right. Federal Rule of Civil Procedure 41(a) is a procedural rule. Appellant argues that its unilateral decision to dismiss Appellee pursuant to FRCP 41(a)(1) completely prevents Appellee from seeking statutory attorneys' fees as a prevailing party. Can a plaintiff deprive a defendant of access to a statutory fee-shifting provision by strategically using a procedural dismissal?

## STATEMENT OF THE CASE

Tracy Cordoba is hardworking mother of four who was caring for her ailing grandparents when this litigation commenced. (3 ER 371). She is the registered subscriber for internet access provided by Cox Communications, and her account is assigned the IP address "24.253.81.201." (3 ER 415).

Ms. Cordoba was unfamiliar with the term "BitTorrent" until the instant action. (2 ER 32). When she received the initial demand letter from Criminal's counsel, which sought prompt payment of $4,900.00, Ms. Cordoba reasonably feared that these letters were simply a new scam akin to the phony IRS phone calls

and Nigerian inheritance emails that citizens are persistently warned about and did not respond. (2 ER 262; 3 ER 390).

Ms. Cordoba ultimately received a third demand letter that included a bona fide Federal Complaint alleging that she infringed on Criminal's copyright on or about August 23, 2016. (2 ER 116). In response to seeing the complaint, on April 24, 2017, Ms. Cordoba contacted Criminal's counsel via letter wherein she professed her innocence and offered to "do anything and everything possible to assist in the investigation" of the infringing event. (2 ER 116-17). She explained that she believed an unauthorized user had accessed her wireless internet, which had been previously unsecured. (2 ER 116). On or about September 4, 2016— approximately one week after the alleged infringing event—Ms. Cordoba's ISP told her that her computer was likely infected with a virus. (*Id.*). In response, Ms. Cordoba took steps to secure her wireless internet network and her computer. (*Id.*).

Consistent with Ms. Cordoba's suspicion regarding an unauthorized user, Criminal's court filings appear to show that no infringing activity was associated with Ms. Cordoba's IP address after she secured her network. (2 ER 106, 109).

Upon being formally served with Criminal's First Amended Complaint, Ms. Cordoba reached out to a friend of hers, Mr. Robert Massi, who happened to be an attorney. (2 ER 113). Mr. Massi, in turn, contacted Criminal's counsel and requested a short extension of time for Ms. Cordoba to file a responsive pleading

so that she could retain counsel. (*Id.*) Criminal's counsel rejected this request, stating that he or his client would be sanctioned by a Magistrate Judge if he granted the requested extension. (2 ER 112). Criminal's counsel then suggested that Ms. Cordoba consider contacting his office to discuss settlement. (*Id.*).

Rather than settle, Ms. Cordoba promptly counsel who again reiterated Ms. Cordoba's offer to make her computer available for inspection, knowing that this would exonerate her and end the litigation. (2 ER 114-15). After Criminal again rejected Ms. Cordoba's offer (2 ER 122), Ms. Cordoba served Criminal with an Offer of Judgment in a final effort to end the litigation prior to incurring legal fees associated with filing a responsive motion (2 ER 125-26).

Criminal rejected this Offer of Judgment on the basis that Ms. Cordoba had failed to produce evidence of her innocence, despite her repeated offers to make her computer available for inspection or assist in Criminal's investigation in whatever capacity she could. (2 ER 130). Ms. Cordoba thereafter filed her Motion to Dismiss all three of Criminal's claims (direct, contributory, and vicarious infringement) against her. (*See* 3 ER 374-81). In addition to arguing that dismissal was appropriate under FRCP 12(b)(6), Ms. Cordoba requested that dismissal be granted pursuant to FRCP 21 because joining her with multiple other defendants would be prejudicial and likely increase the cost of her defense. (3 ER 382-85). Rather than follow its stated "normal policy" and sever Ms. Cordoba based on her

unique defenses, Criminal instead filed a response to her motion (1 ER 17) that did not include any opposition to Ms. Cordoba's argument for dismissal of the contributory and vicarious infringement claims against her. (*See* 3 ER 355-58).

After filing its partial opposition, Criminal demanded that the parties conduct a conference pursuant to FRCP 26(f). (2 ER 51). During the 26(f) call, Criminal's counsel cautioned the defendants that at least one similarly-situated defendant had been forced to declare bankruptcy as a result of legal fees incurred defending a BitTorrent claim rather than by simply paying a settlement. (2 ER 264). Criminal subsequently asserted that Ms. Cordoba's zealous defense was "a reckless and very foolish course of action . . . seemingly designed to bankrupt" Ms. Cordoba, for which defense counsel should be admonished. (2 ER 220).

Ms. Cordoba asked Criminal to stipulate to stay discovery pending decision of the fully-briefed motion to dismiss, which Criminal denied. (2 ER 263-64). Ms. Cordoba, assuming that the matter would be litigated to judgment and confident that the pending motion to dismiss would be granted in whole or in part, filed a Motion to Stay. Following this, the parties unsuccessfully attempted to memorialize their 26(f) conference in a proposed discovery plan and scheduling order. (2 ER 150-66). On July 7, 2017, Criminal unilaterally filed a proposed discovery plan that omitted objections raised by Ms. Cordoba and the other two appearing defendants. (3 ER 424). Ms. Cordoba was thus compelled to file a

8

competing proposed discovery plan so that the court would be aware of defendants' positions regarding discovery. (1 ER 17; 3 ER 424).

On July 13, 2017, at Criminal's request, the court issued a notice of hearing on Ms. Cordoba's motion to stay and the proposed discovery plan. (3 ER 424). Five days later, on July 18, 2017, Ms. Cordoba was dismissed from the case. (*Id.*).

Ms. Cordoba's counsel was thereafter retained by a different defendant and thus appeared at the discovery hearing. (3 ER 425). At this hearing, Magistrate Judge Leen noted that based on her preliminary peek at Ms. Cordoba's motion to dismiss, if an identical motion was brought, the defendant "may win some -- some rounds on [the] motion to dismiss," indicating that had Ms. Cordoba not been dismissed, she may well have secured at least a partial dismissal (2 ER 298).

Ms. Cordoba thereafter moved for her attorneys' fees and costs pursuant to 17 U.S.C. § 505, which Criminal opposed. (1 ER 10). Ms. Cordoba's motion noted that recent Supreme Court decisions had acknowledged that a defendant's litigation objectives are vastly different from those of a plaintiff. (2 ER 229-48). Thus, Ms. Cordoba argued that she could be properly deemed a "prevailing party" for purposes of the Copyright Act's fee-shifting provision because a defendant who seeks dismissal and is then strategically has "fulfilled its primary objective whenever the plaintiff's challenge is rebuffed." *CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S. Ct. 1642, 1651 (2016). (2 ER 232).

9

Anticipating that Criminal would rely on the argument that, pursuant to *Cadkin v. Loose*, a defendant who remains at risk of refiling cannot be considered a prevailing party, Ms. Cordoba argued that plaintiffs in mass-defendant BitTorrent copyright infringement claims do not bring suits with the intention of litigating to judgment. (2 ER 238). Therefore, it was almost certain that Criminal would not refile against Ms. Cordoba, thereby forever depriving her of the opportunity to be made whole—either by receiving a judgment in her favor on the merits, or by seeking to recoup costs and fees pursuant to FRCP 41(d). (2 ER 207).

As an alternative avenue of relief, Ms. Cordoba argued that if she was not deemed a prevailing party under 17 U.S.C. § 505, Criminal was required to pay all costs, including reasonable attorneys' fees, that she incurred following rejection of her FRCP 68 Offer of Judgment. (2 ER 211-13).

After nearly 8 months of consideration, the district court granted Ms. Cordoba's motion. (1 ER 10-20). Relying on *CRST Van Expedited, Inc. v. E.E.O.C.*, the district court held that Ms. Cordoba achieved prevailing party status because she successfully rebuffed Criminal's attempt to alter their legal relationship. (1 ER 16-18). The district court noted that in the months following dismissal, Criminal had still not filed a separate action against Ms. Cordoba, despite its stated practice of doing so expeditiously. (1 ER 17).

10

In its Order, the district court noted that part of the basis for awarding Ms. Cordoba her requested fees was because Criminal "engaged in unreasonable litigation tactics . . . [that] forced defendant to incur more legal fees than would otherwise have been necessary." (1 ER 16-18). Criminal thereafter filed a motion to vacate arguing that the district court had made a ruling that erroneously contradicted *Cadkin v. Loose*. (2 ER 23). Criminal's motion was denied because "there exists no basis pursuant to Rule 60 (b) upon which the court may grant [Criminal's] motion." (1 ER 5).

This appeal followed, seeking an answer to whether this Court's decision in *Cadkin v. Loose* gave Criminal the absolute right to avoid the fee-shifting provision of 17 U.S.C. § 505 by exercising its unilateral authority to dismiss Ms. Cordoba pursuant to FRCP 41(a)(i) prior to substantive judicial review.

## SUMMARY OF THE ARGUMENT

I.     In May 2016, the Supreme Court's held that when fee-shifting is available, a defendant may be deemed a prevailing party "whenever the plaintiff's challenge is rebuffed" even absent a decision on the merits. *CRST Van Expedited v. E.E.O.C.*, 136 S. Ct. 1642, 1651, 194 L. Ed. 2d 707 (2016). One month later, the Supreme Court decided *Kirtsaeng v. John Wiley & Sons, Inc.*, where it reasoned that the fee-shifting provision in the Copyright Act was designed to give "a person defending against a patently meritless copyright claim [ ] every incentive to keep

fighting." 136 S. Ct. 1979, 1986, 195 L. Ed. 2d 368 (2016). These cases, taken together, strongly indicate that a defendant in a copyright litigation may be considered a prevailing party even when dismissed voluntarily. To the extent that *Cadkin v. Loose* conflicts with *CRST* and *Kirtsaeng*, it should be reexamined.

II.    The district court properly exercised its broad discretion to award Ms. Cordoba her costs, including reasonable attorneys' fees, under 17 U.S.C. § 505. The district court properly considered the totality of the circumstances, as required by *Fogerty v. Fantasy Inc.*, 510 U.S. 517, 534 (1994), and concluded that an award of fees to Ms. Cordoba would further the goals of the Copyright Act. The district court's order clearly sets forth the basis for its decision, highlighting Criminal's unreasonable litigation tactics that forced Ms. Cordoba to incur unnecessarily high legal fees, which the Supreme Court has acknowledged may be an appropriate basis for a fee award under 17 U.S.C. § 505. *See Kirtsaeng*, 136 S. Ct. at 1988-89.

III.    Even if this Court does not agree that *CRST* and *Kirtsaeng* have effectively overruled *Cadkin*, the award of fees to Ms. Cordoba should nonetheless be affirmed because any error made by the district court does not rise to the level of *reversible* error for three main reasons: first, Ms. Cordoba can properly be considered a prevailing party because Criminal has not filed a second action against her and, if it does, she will undoubtedly prevail as a matter of law. Second, the district court's decision is amply supported by the record and furthers the

purposes of the Copyright Act. Finally, Ms. Cordoba could have properly been awarded costs and fees pursuant to FRCP 68 as well as the district court's inherent powers. Accordingly, reversal of the district court's order is unwarranted.

IV.     The Rules Enabling Act does not allow a procedural rule to modify or abridge a substantive right. Because the availability of an attorneys' fee award under the Copyright Act is a substantive right, FRCP 41(a) cannot be used to diminish a party's access to an award of fees.

## ARGUMENT

Traditionally, an aggrieved plaintiff files suit for the purpose of having its rights vindicated by a judicial determination on the merits. The presupposition that a plaintiff would not initiate court action without the intent to litigate the case to its conclusion underscores all aspects of American jurisprudence. However, it has become apparent that this foundational assumption does not apply to plaintiffs in the context of multi-defendant BitTorrent litigation.[6]

For this unique breed of plaintiff, litigation is initiated "not to be made whole, but rather as a primary or supplemental revenue stream." *Third Degree Films v. Does 1-47*, 286 F.R.D. 188, 190 n.1 (D. Mass. 2012) (internal citation

---

[6] Because this Circuit is already familiar with the process of file-sharing via BitTorrent networks, Ms. Cordoba will not elaborate here. *See generally Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1035-36 (9th Cir. 2018) (providing background on peer-to-peer piracy).

omitted). The supplemental revenue stream is realized by leveraging the threat of financial ruin caused by the cost of litigation and/or the statutory damages, including attorneys' fees, available under the Copyright Act against a relatively small nuisance settlement payment of a few thousand dollars. More and more courts are recognizing the "the risk of inappropriate settlement leverage" that is unique to multi-defendant BitTorrent plaintiffs. *See*, *e.g., LHF Prods., Inc. v. Boughton*, 299 F. Supp. 3d 1104, 1109 (D. Nev. 2017) (reviewing how courts across the country deal with mass joinder).

To be clear: Ms. Cordoba does not dispute that digital piracy is a legitimate, far-reaching problem. For that reason she willingly and repeatedly offered to assist Criminal's investigation into the alleged infringement, offering to allow Criminal to inspect her computer so that it could verify her innocence. *See* 2 ER 116-117.

Ms. Cordoba *does*, however, dispute Criminal's insistence that the Rules and present case law simultaneously provide BitTorrent plaintiffs with a weapon to coerce settlement and an escape hatch to avoid having to pay a defendant's costs and fees under 17 U.S.C. § 505. That is what Criminal is seeking to do. The district court concluded that the escape hatch should be closed. This Court should conclude the same.

The district court, after carefully reviewing the facts of this specific case, concluded that Criminal's prosecution of the action against Ms. Cordoba was

14

unreasonable. 1 ER 16-19. The district court determined that Criminal's post-filing actions against Ms. Cordoba were done with the intent to increase her litigation costs. 1 ER 17-18. Thus, an award of fees to Ms. Cordoba under § 505 of the Copyright Act was proper and should be affirmed.

## I. THE COPYRIGHT ACT AND SUPREME COURT PRECEDENT REQUIRE THE CONCLUSION THAT MS. CORDOBA IS A PREVAILING PARTY FOR THE PURPOSE OF FEE-SHIFTING PURSUANT TO 17 U.S.C. § 505

In its opening brief, Criminal asserted unequivocally that "no defendant in a copyright infringement action voluntarily dismissed without prejudice under Rule 41(a)(1)(A) can be a prevailing party as a matter of law." Appellant Br. p. 26.

Ironically, Rule 41(a)(1) was created with the specific intent to curb a plaintiff's ability to abuse nonsuit rules in order to deprive defendants of relief:

> [Rule 41(a)(1)] allowed a plaintiff to dismiss an action without the permission of the adverse party or the court only during the brief period before the defendant had made a significant commitment of time and money. Rule 41(a)(1) was not designed to give a plaintiff any benefit other than the right to take one such dismissal without prejudice.

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397, 110 S. Ct. 2447, 2456–57 (1990). There is no reason to believe that the purpose of Rule 41 has changed in the years following *Cooter*. It would be inconsistent with the purpose behind Rule 41 to protect a plaintiff who brings litigation to try and coerce settlement payments and then uses voluntary dismissal as a means to strategically avoid the consequences of a fee-shifting statute.

15

Here, the district court properly considered the Copyright Act and relevant case law and concluded that Ms. Cordoba: (1) was eligible for a fee award under 17 U.S.C. § 505, and (2) that such an award was warranted based on the facts and circumstances of her case. The district court did not err. Therefore, this Court should affirm the district court's order granting Ms. Cordoba her requested fees.

## A. Standard Of Review

The district court's decision regarding the award of attorneys' fees under the Copyright Act is reviewed for an abuse of discretion. *Shame On You Prods., Inc. v. Banks*, 893 F.3d 661, 665 (9th Cir. 2018). Any legal analysis or statutory interpretations are reviewed *de novo. See Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1216 (9th Cir. 1997).

## B. *CRST* Acknowledged That A Plaintiff Is The Only Party In An Action Seeking A Material Alteration Of The Legal Relationship, Thus Applying The *Buckhannon* "Material Alteration" Test To Defendants Is Inequitable

The district court applied the correct legal test to determine whether Ms. Cordoba could properly qualify as a "prevailing party" under the Copyright Act and thus be eligible for an award of fees. Neither the district court nor Ms. Cordoba have claimed that the *Buckhannon* test has been overruled; that clearly isn't the current status of the law. *See* 1 ER 17-18; *CRST*, 136 S.Ct. at 1646 (*citing Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 605, 121 S. Ct. 1835, 1840 (2001)). Rather, the district court agreed

with Ms. Cordoba that the Supreme Court's very clear language in *CRST* required

courts to apply *Buckhannon* to plaintiffs only:

> [A] *plaintiff* is the prevailing party because he has received a 'judicially
> sanctioned change in the legal relationship of the parties.' The Court,
> however, has not set forth in detail how courts should determine whether a
> *defendant* has prevailed.

*CRST*, 136 S.Ct. at 1646 (quoting *Buckhannon*, 532 U.S. at 604-605)

(emphasis added). The Court held that "a defendant need not obtain a favorable

judgment on the merits in order to be a 'prevailing party.'" *CRST*, 136 S.Ct. at

1651.

CRST involved, in part, a judicial determination that the E.E.O.C. had failed

to take certain required pre-suit steps. However, that does not invalidate the

proposition that *CRST* changed the requirements that a defendant must meet to be

properly considered a "prevailing party" under the Copyright Act. Because

different statutes will have different goals and objectives, the Supreme Court has

"look[ed] to the large objectives of the relevant Act." *Kirtsaeng*, 136 S.Ct. at 1986.

The fee-shifting provisions of the Copyright Act are significantly different

from those in cases involving civil rights laws. Fee-shifting provisions in civil

rights cases are purposefully weighted in a plaintiff's favor. This is in contrast to

the fee-shifting provision of the Copyright Act, which must be applied

evenhandedly to both plaintiffs and defendants. *Fogerty*, 510 U.S. at 536. This is,

17

in part, due to the fact that valid copyright holders can find themselves on either side of a lawsuit, and both defendants and plaintiffs "run the gamut from corporate behemoths to starving artists." *Id.*

Congress wrote the fee-shifting provision of the Copyright Act to be available to a prevailing party, *not* a prevailing plaintiff. According to the Supreme Court, this is because the objectives of the Copyright Act are to encourage and reward unique creations while allowing others to build upon those creations. *Fogerty*, 510 U.S. at 526. Thus, when discussing § 505 of the Copyright Act, the Supreme Court has repeatedly concluded that "defendants should be encouraged to litigate meritorious copyright defenses to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Kirtsaeng*, 136 S. Ct. at 1985 (*quoting Fogerty*, 510 U.S. at 527).

Of particular importance to this appeal is that the *CRST* Court expressly declined to consider whether "a defendant must obtain a preclusive judgment in order to prevail" because the parties had not raised that issue below. 136 S.Ct. at 1653. Thus, the Court left that determination for the Circuit Courts to consider as a matter of first impression.[7] *Id.*

---

[7] On remand, the Iowa district court held that "A party can still enjoy a material alteration in the legal relationship between itself and its opponent even without obtaining a preclusive judgment." *Equal Employment Opportunity Comm'n v.*

Ms. Cordoba hopes that this Court will take this opportunity to reexamine *Cadkin* and determine whether it must be clarified or abrogated in light of *CRST*.

### 1. Prior to *CRST*, the relevant case law focused on Plaintiffs

*CRST* does not claim to overrule *Buckhannon*. Rather, *CRST* addresses *Buckhannon*'s omission: the litigation goals of a defendant. In *CRST* the Supreme Court expressly acknowledged that it "has not articulated a precise test for when a defendant is a prevailing party," and no precedent addressed how courts should determine whether a defendant prevails. 136 S.Ct. at 1646. The Court said:

> Plaintiffs and defendants come to court with different objectives. A plaintiff seeks a material alteration in the legal relationship between the parties. A defendant seeks to prevent this alteration to the extent it is in the plaintiff's favor.

136 S.Ct. at 1646.

Certainly, statutes containing fee-shifting provisions are to be interpreted similarly because they depart from the traditional American Rule requiring that

---

*CRST Van Expedited, Inc.*, 277 F. Supp. 3d 1000, 1014 (N.D. Iowa 2017). In support of that holding, the Iowa court cited to this Circuit's decision in *Wood v. Burwell*, 837 F.3d 969 (9th Cir. 2016). *But see United States v. $32,820.56*, 838 F.3d 930, 936–37 (8th Cir. 2016).

each party bear its own fees. *See*, *e.g., Buckhannon*, 532 U.S. at 609; *Flight Attendants v. Zipes*, 491 U.S. 754, 758, n. 2, 109 S.Ct. 2732, 2734, n. 2, 105 L.Ed.2d 639 (1989) ("[F]ee-shifting statutes' similar language is 'a strong indication' that they are to be interpreted alike."). This allows for similar statutes to be interpreted and implemented consistently, which lets parties "mak[e] properly informed judgments about whether to litigate." *Kirtsaeng*, 136 S.Ct. at 1986.

Prior to *CRST*, when considering the "prevailing party" language that is present in a variety of statutory schemes, courts uniformly relied on the holding of *Buckhannon*. In *Buckhannon*, the Supreme Court rejected the "catalyst theory" as a basis for determining that a plaintiff had prevailed in the action brought. Part of the Court's rationale for this decision was that a catalyst theory may have proved to be a disincentive for a defendant to voluntarily change the complained-of behavior, and that a voluntary cessation of bad actions, which may or may not be illegal, is something to encourage. *Buckhannon*, 532 U.S. at 608. The Court further rejected the argument that disallowing fees pursuant to a catalyst theory would potentially allow defendants to "unilaterally moot[] an action before judgment in an effort to avoid an award of attorney's fees," reasoning that "a defendant's change in conduct will not moot the case." *Id.* at 608-09.

Thus, *Buckhannon* stood for the proposition that a prevailing *plaintiff* must obtain a material alteration of the parties' legal relationship. *CRST* has now

clarified that a defendant must successfully resist this alteration in order to prevail. Put another way, the *CRST* decision indicates that a court could properly conclude that a defendant has prevailed simply when the plaintiff has not. *CRST*, 136 S.Ct. at 1651. The disparity between the two standards is reasonable because the plaintiff is the party seeking a material alteration of the legal relationship, but a "defendant has, however, fulfilled its primary objective whenever the plaintiff's challenge is rebuffed." *Id.* at 1651.

Understandably, nearly every court interpreting a "prevailing party" fee-shifting statute conducted an analysis by applying *Buckhannon*'s material alteration test. *See*, *e.g.*, *Cadkin v. Loose*, 569 F.3d 1142, 1150 (9th Cir. 2009) (collecting cases supporting the application of *Buckhannon* to copyright claims). However, *CRST* shows that *Buckhannon*'s "material alteration test" is only properly applied when determining a plaintiff's prevailing party status. By contrast, the lack of a material alteration between the parties is a valid basis for conferring prevailing party status upon a defendant. *CRST*, 136 S.Ct. at 1651.

> **2.** **CRST, when read in conjunction with *Kirtsaeng*, requires the conclusion that the purposes of the Copyright Act are furthered by allowing defendants to be deemed "prevailing parties" even when they are voluntarily dismissed**

Approximately one month after the *CRST* decision was handed down, the Supreme Court decided a copyright fee-shifting case: *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S.Ct. 1979, 1989 (2016).

21

In *Kirtsaeng*, the Court reversed a decision that declined to award prevailing party fees under 17 U.S.C. § 505 to a defendant because the plaintiff's claim was reasonable. *Id.* The Court, in analyzing the purpose of the fee-shifting provision of the Copyright Act concluded that it was sometimes necessary to invoke § 505 to "deter . . . overaggressive assertions of copyright claims." *Id.* Thus, fee-shifting in a defendant's favor will deter overly-aggressive plaintiffs, discourage coerced settlements, and give innocent defendants:

> [E]very incentive to keep fighting, no matter that attorney's fees in a protracted suit might be as or more costly than a settlement. Conversely . . . [t]he copyright holder with no reasonable infringement claim has good reason not to bring suit in the first instance (knowing he cannot force a settlement and will have to proceed to judgment).

*Id.* at 1987–88.

The problem with the *Kirtsaeng* decision is that it presumes a plaintiff who lacks a meritorious claim "will have to proceed to judgment." *Id.* Allowing a plaintiff to use a Rule 41(a)(1) voluntary dismissal to avoid fee-shifting under the Copyright Act violates the reasoning underlying the *Kirtsaeng* decision. Certainly, a defendant could preclude a plaintiff from being able to unilaterally dismiss by filing an answer or a summary judgment motion. *See* FRCP 41. However, placing that burden on a defendant is unjust because it could require a defendant to waive possible defenses available under FRCP 12(b).

The injustice of requiring a defendant to answer rather than move to dismiss is compounded in situations like Ms. Cordoba's. Ms. Cordoba, through an attorney friend of hers, requested a reasonable 10-day extension to respond to Criminal's complaint. This request was made so that Ms. Cordoba would have time to secure counsel of her own. Criminal unreasonably denied this request, claiming that extending this courtesy would result in the imposition of sanctions. 2 ER 112.[8]

Through this appeal, Criminal is asking that this Circuit hold that defendants, like Ms. Cordoba, be wholesale precluded from recover attorneys' fees that were incurred as a direct result of Criminal's litigation tactics. The basis for this request is that Criminal believes the Rules create an absolute right for a plaintiff to dismiss without consequence. However, the invocation of that right cannot reasonably serve to deprive a defendant of the right to fight against baseless claims through a 12(b) motion.

### 3. In the limited context of a defendant's prevailing party status under the Copyright Act, this Circuit should revert to the standard set forth in *Corcoran v. Columbia Broadcasting System, Inc.*, to be in line with *CRST* and *Kirtsaeng*

Prior to applying *Buckhannon*'s material alteration test to defendants, this Circuit had determined that "a defendant in a copyright suit was a prevailing party

---

[8] The questionable veracity of that assertion is compounded by the fact that counsel for Criminal claimed these sanctions would be imposed by a Magistrate Judge who was not assigned to Ms. Cordoba's case.

and was entitled to attorney's fees when the plaintiff voluntarily dismissed the complaint without prejudice." *Cadkin*, 569 F.3d at 1145 (*citing Corcoran v. Columbia Broadcasting System, Inc.*, 121 F.2d 575, 576 (9th Cir. 1941)).

After *Buckhannon*, in the context of fee-shifting statutes that are not intended to treat plaintiffs and defendants equally, this Circuit held that a defendant could not be considered a "prevailing party" if a plaintiff had the ability to re-file its claim. *Oscar v. Alaska Dep't of Educ. & Early Dev.*, 541 F.3d 978, 982 (9th Cir. 2008). This was because such a defendant had failed to obtain the "material alteration" required under *Buckhannon*. Relying on both *Buckhannon* and *Oscar*, concluded *Corcoran* was "clearly irreconcilable with" the binding precedent at the time. Thus, in *Cadkin*, this Circuit concluded that a voluntary dismissal without prejudice did not confer prevailing party status on a copyright infringement defendant.

Importantly, the *Buckhannon* decision was based entirely on language, legislative history, and precedent that viewed the term "prevailing" through the lens of a *plaintiff*. *Id.* at 603-604. Thus, *Buckhannon* relied on precedent that said, "our respect for ordinary language requires that a *plaintiff* receive at least some relief on the *merits of his claim* before he can be said to have prevailed." *Id.* (*quoting Hewitt v. Helms*, 482 U.S. 775, 760 (1987)). Similarly, the *Buckhannon* Court reviewed legislative history in an earlier decision that used nearly identical

24

language to conclude that an interim award of fees is only available "when a party has prevailed on the merits of some of *his claims*." 532 U.S. at 603 (*quoting Hanrahan v. Hampton*, 446 U.S. 754, 758 (1980)). Thus, the material alteration test was born from a vantage point focused solely on a plaintiff's litigation goals.

It was not until the 2016 *CRST* decision that the Court expressly stated the clear logical implication of its prior plaintiff-centric holdings: the converse to requiring a plaintiff to achieve a material alteration in the legal relationship of the parties would be to require that a defendant prevent a material alteration of the legal relationship. 136 S.Ct. at 1646. This result is based upon common sense. *Id.*

Moreover, reexamining *Cadkin* would enable the Court to consider the *Kirtsaeng* decision, which underscored the critical importance of fee-shifting to achieve the goals of the Copyright Act.

In *Kirtsaeng*, the Supreme Court chose to adopt an "objective-reasonableness approach" to determining whether an award of fees should be made under § 505. This approach provided incentives to both copyright holders and innocent defendants because "when a person (again, whether plaintiff or defendant) has an unreasonable litigating position, the likelihood that he will have to pay two sets of fees discourages legal action." 136 S.Ct. at 1986-87. Thus, the Court reasoned, while a "copyright holder with no reasonable infringement claim has good reason not to bring suit in the first instance . . . the infringer with no

25

reasonable defense has every reason to give in quickly, before each side's litigation costs mount." *Id.* at 1987. In the Supreme Court's view, these parallel incentives and disincentives best served the purposes of the Copyright Act "by enhancing the probability that both creators and users (*i.e.* potential plaintiffs and defendants) will enjoy the substantive rights the statute provides." *Id.*

Taking *CRST* and *Kirtsaeng* together, it becomes clear that the purposes of the Copyright Act are best served by allowing a defendant to recover fees as a prevailing party when they are dismissed. A defendant must be able to predict with reasonable certainty whether he or she will be able to recover costs and fees under § 505 when decided whether to fight a meritless suit.

In light of the *CRST* holding that defendants need to be evaluated differently than plaintiffs because of their competing litigation objectives, this Circuit's prior *Corcoran* standard should be revisited. This would not conflict with *Buckhannon* because *CRST* has now clarified that plaintiffs and defendants each prevail under different circumstances. Solely in relation to defendants, *Corcoran* is clearly more in line with *CRST* than *Cadkin*. Applying *Buckhannon*'s requirement that a defendant seeking fees under 17 U.S.C. § 505 must first achieve a judicially sanctioned material alteration of the parties' legal relationship does not comport with *CRST*'s conclusion that a defendant "fulfill[s] its primary objective whenever the plaintiff's challenge is rebuffed." *CRST*, 136 S.Ct. at 1651.

26

*CRST* requires the conclusion that prevailing party status under the Copyright Act be available to defendants who zealously defend their innocence and are voluntarily dismissed under Rule 41(a)(1), regardless of whether such dismissal is with or without prejudice.

Here, Ms. Cordoba sought dismissal. Ms. Cordoba was dismissed. Thus, she met her primary objective and was properly deemed a prevailing party under *CRST*. This Court should therefore affirm the district court's decision.

## II. THE DISTRICT COURT BELOW PROPERLY APPLIED THE LAW WHEN GRANTING MS. CORDOBA'S MOTION FOR ATTORNEYS' FEES AND RELATED EXPENSES

### A. Standard Of Review

The district court's decision regarding the award of attorneys' fees under the Copyright Act is reviewed for an abuse of discretion. *Shame On You Prods., Inc. v. Banks*, 893 F.3d 661, 665 (9th Cir. 2018) The district court's findings of fact underlying the award are reviewed for clear error. *See Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 759 (9th Cir. 2015); *Smith v. Jackson*, 84 F.3d 1213, 1221 (9th Cir. 1996). The court's calculation of reasonable attorneys' fees is reviewed for an abuse of discretion. *The Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829, 833 (9th Cir. 2003).

Under the very deferential abuse of discretion standard, a reviewing court cannot reverse absent a definite and firm conviction that the district court

27

committed a clear error of judgment in the conclusion it reached upon a weighing of relevant factors. *See Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 601 (9th Cir. 2016) (noting that reversal under abuse of discretion standard is only appropriate when the reviewing court is firmly convinced that the decision "lies beyond the pale of reasonable justification under the circumstances"). The abuse of discretion standard requires an appellate court to uphold a district court determination that falls within a broad range of permissible conclusions. *See Hung Lam v. City of San Jose*, 869 F.3d 1077, 1085 (9th Cir. 2017).

### B. The Court's Discretion To Award Attorneys' Fees Is Intentionally Broad And Need Only Be Based On The Totality Of The Circumstances And The Essential Goals Of The Copyright Act

The Copyright Act confers broad discretion on the district court to award attorneys' fees. *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 866 F.2d 1545, 1556 (9th Cir. 1989). In the context of copyright infringement suits, the court may award fees to a prevailing party after considering multiple non-exhaustive factors, including: (1) the degree of success obtained; (2) the frivolousness of the losing party's position; (3) the motivation of the losing party's actions; (4) the objective unreasonableness of the losing party's factual and legal arguments; and (5) the effect an award would have on compensation and deterrence. *Kirtsaeng*, 136 S.Ct. at 1985; *see also Maljack Productions, Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 (9th Cir. 1996). These factors also forbid the district court from

automatically awarding fees, instead requiring "a more particularized, case-by-case assessment." *Fogerty*, 510 U.S. at 527.

The *Kirtsaeng* Court referred to two scenarios in which courts, having assessed the totality of the circumstances, had properly awarded fees despite the reasonableness of a losing party's position. 136 S.Ct. at 1989. These exemplars were: *Viva Video, Inc. v. Cabrera*,[9] in which the Second Circuit ordered fee-shifting in response to a party's litigation misconduct; and *Bridgeport Music, Inc. v. WB Music Corp.*,[10] wherein the Sixth Circuit ordered fee-shifting to deter "overaggressive assertions of copyright claims." *Id.* In line with these exemplars, "a leading copyright treatise notes that attorney's fees have been awarded where a party conducted copyright litigation in a manner calculated 'to increase the opposing party's costs.'" *Countryman Nevada, LLC v. DOE*, 193 F. Supp. 3d 1174, 1182 (D. Or. 2016) (*quoting* 5 Melville B. Nimmer and David Nimmer, Nimmer on Copyright § 14.10[D][1] (2015)).

In its opening brief, Criminal claims that the district court erroneously applied the legal standard required for awarding attorneys' fees in Title VII cases. Appellant Br. at 37. This is a curious assertion considering that the Title VII

_____

[9] 9 Fed. Appx. 77, 80 (2d Cir. 2001)

[10] 520 F.3d 588, 593–595 (6th Cir. 2008)

standard—requiring a court to find that a plaintiff's action was frivolous, unreasonable, or without foundation—is far more stringent than the standard under § 505, which only requires that a district court use its discretion to award fees that are reasonable. It is, therefore, axiomatic that if a fee award would be justified under the higher Title VII standard, it would also be appropriate under the Copyright Act. Accordingly, even if the district court applied the incorrect standard (which it did not), that error would not change the result.

Criminal also claims that the district court's order fails to take into account the portion of *Ets-Hokin v. Skyy Spirits, Inc.*,[11] in which this Circuit directed judges to consider "whether the chilling effect of attorneys' fees may be too great or impose an inequitable burden on an impecunious plaintiff." Appellant Br. p. 39. It can hardly be argued that Criminal—the producer of the "multi-million dollar movie, '*Criminal*,' starring Oscar winners Kevin Costner and Tommy Lee Jones, and BAFTA winner Gary Oldman"[12]—is impecunious. By contrast, depriving Ms. Cordoba the right to recover fees under 17 U.S.C. § 505 runs the risk of having the very chilling effect cautioned against in *Ets-Hokin*; the only difference would be

---

[11] 323 F.3d 763, 766 (9th Cir. 2003).

[12] 3 ER 350.

that innocent impecunious defendants, rather than plaintiffs, would be chilled from

defending themselves against deep-pocketed plaintiffs like Criminal.

Here, the district court's order clearly evidences the particularize, case-by-

case assessment demanded by *Fogerty* and its progeny. 1 ER 16-19. The district

court's order focused on the specific actions that Criminal took in relation to its

litigation against Ms. Cordoba only. 1 ER 16-17. The district court looked at the

papers filed by Criminal and determined that Criminal failed to follow its own

stated policies and procedures when dealing with Ms. Cordoba. *Id.*

Most germane to this appeal is the district court's factual finding that

Criminal engaged in "unreasonable litigation tactics as related to defendant

Cordoba." 1 ER 16. These unreasonable litigation tactics were not, as Criminal

claims, relating to the "lawful prosecution of [Criminal]'s case." Appellant Br. 39-

40. Rather, the district court set out a number of factors that it found "caused

Cordoba to spend far more in attorney's fees than should have been required of her

to defend this case." 1 ER 17. In support of this conclusion, the district court made

the following factual findings:

> [Criminal]'s counsel failed to provide defendant with unpublished trial court
> orders and providing inaccurate citations, which augmented the difficulties
> defense counsel faced in litigating its position. Further, [Criminal] refused to
> accommodate defendant's reasonable scheduling requests. Furthermore,
> [Criminal]'s decision to file a unilateral scheduling order and ignore
> defendant's objections caused defendant to incur otherwise unnecessary
> expenses to convey to the court its position regarding discovery.

31

1 ER 18. These litigation tactics, which unnecessarily and unreasonably made litigation more expensive for Ms. Cordoba, do not further the aims of the Copyright Act. Rather, supported by Nimmer on Copyright, the district court appropriately exercised its discretion to award Ms. Cordoba her requested fees after finding that Criminal conducted litigation in a manner calculated "to increase the opposing party's costs."

The district court exercised its reasonable judgment and discretion in weighing the factors set forth in *Kirtsaeng*, *Fogerty*, and the like. The district court appropriately assessed these factors under the *CRST* standard for considering a defendant a "prevailing party," and appropriately concluded that the facts of this case merited an award of fees to Ms. Cordoba. This conclusion should be affirmed.

**III. EVEN IF THIS COURT DOES NOT BELIEVE THAT *CRST* EFFECTIVELY OVERRULED *CADKIN*, THE DISTRICT COURT SHOULD NONETHELESS BE AFFIRMED BECAUSE THE AWARD IS SUPPORTED BY THE RECORD AND THEREFORE DOES NOT CONSTITUTE REVERSIBLE ERROR**

**A. Standard Of Review**

The district court's decision may be affirmed on any ground supported by the record, even if not relied upon by the district court. *See Cassirer v. Thyssen-Bornemisza Collection Found.*, 862 F.3d 951, 974 (9th Cir. 2017). Accordingly, the decision may be affirmed, "even if the district court relied on the wrong grounds or wrong reasoning." *Cigna Property and Cas. Ins. Co. v. Polaris Pictures*

*Corp.*, 159 F.3d 412, 418 (9th Cir. 1998) (citation omitted).

> **B.** **Even If This Court Maintains The Holding In *Cadkin*, Ms. Cordoba Should Nonetheless Be Deemed A Prevailing Party**

There is adequate support in the record for an award of attorneys' fees to Ms. Cordoba, even if this Circuit does not revisit *Cadkin*. Thus, any error that may have been made was harmless, and the district court's order should be affirmed.

> **1.** **This Circuit has determined that a nearly-identical BitTorrent Complaint failed to state a claim, effectively precluding Criminal from refiling its action against Ms. Cordoba**

In *Cobbler Nevada, LLC v. Gonzales*, this Circuit unequivocally stated that the bare allegations made by BitTorrent plaintiffs were insufficient because one's "status as the registered subscriber of an infringing IP address, standing alone, does not create a reasonable inference that he is also the infringer." 901 F.3d 1142, 1145 (9th Cir. 2018). To reach this conclusion, this Circuit applied the standards set forth in *Twombly* and *Iqbal* and found that the plaintiff's claim for direct copyright infringement necessarily failed because "simply identifying the IP subscriber solves only part of the puzzle. A plaintiff must allege something more to create a reasonable inference that a subscriber is also an infringer." *Id.* Similarly, the *Cobbler* Court affirmed the dismissal of plaintiff's claim for contributory copyright infringement because "without allegations of intentional encouragement or inducement of infringement, an individual's failure to take affirmative steps to police his internet connection is insufficient to state a claim." *Id.*

In line with prior Circuit precedent, the *Cobbler* Court stated that a copyright plaintiff must show that "the defendant himself" was the infringer. *Id.* at 1147. The bare allegations that a defendant was the registered internet service subscriber was insufficient to create a sufficient nexus between the defendant and his IP address for liability to attach. Importantly, the Court noted that Cobbler's claim for contributory infringement "both strays from precedent and effectively creates an affirmative duty for private internet subscribers to actively monitor their internet service for infringement." *Id.* at 1149. This affirmative duty would be unduly burdensome and would "put at risk any purchaser of internet service . . . who is not technologically savvy enough to secure the connection to block access by a frugal neighbor." *Id.*

Ms. Cordoba has always maintained that she is the very defendant that the *Cobbler* Court was attempting to protect. She did not secure her wireless internet network until the beginning of September 2016. All of Criminal's evidence regarding alleged infringement associated with Ms. Cordoba's IP address shows that it took place *before* her network was secured.

Moreover, If Criminal had not voluntarily dismissed Ms. Cordoba, she would have prevailed on her Motion to Dismiss. The arguments raised in her motions are essentially identical to the reasoning of the *Cobbler* decision. *Compare Cobbler Nevada*, 901 F.3d at 1147-49 *with* 3 ER 375-380.

34

Because the record contains evidence sufficient to support the district court's award of Ms. Cordoba's costs and attorneys' fees under 17 U.S.C. § 505, the district court's decision should be affirmed.

### C.  Even If She Is Not A Prevailing Party, Ms. Cordoba Is Still Entitled To Fees Under FRCP 68

In the alternative, if this Circuit is disinclined to agree with any of the foregoing arguments, Ms. Cordoba should nonetheless be granted an award of post-offer costs and fees in accordance with FRCP 68.

Under Rule 68, a party need not be deemed a "prevailing party" to recover costs, including attorneys' fees. A non-prevailing party is nonetheless entitled to costs so long as "the judgment that the offeree finally obtains is not more favorable than the unaccepted offer." FRCP 68(d). An award of costs under Rule 68 is mandatory because "Rule 68 leaves no room for the court's discretion." *United States v. Trident Seafoods Corp.*, 92 F.3d 855, 859 (9th Cir. 1996). This Circuit has repeatedly recognized that a plaintiff who rejects a Rule 68 offer in excess of the judgment ultimately obtained at trial must bear its own and the defendant's post-offer costs, including reasonable attorneys' fees. *Haworth v. Nevada*, 56 F.3d 1048, 1052 (9th Cir.1995); *Marek v. Chesny*, 473 U.S. 1, 9 (1985) (concluding that "costs" under FRCP 68 should include attorneys' fees when they are permitted by the underlying substantive law).

Here, Ms. Cordoba served a valid Offer of Judgment, which Criminal

35

rejected. Ms. Cordoba's Offer of Judgment would have allowed Criminal to enter judgment in its favor. Instead, Criminal dismissed Ms. Cordoba. Therefore, Criminal failed to achieve a result that was better than the one offered. Accordingly, If none of the foregoing arguments persuade this Court to affirm the district court's order, then Ms. Cordoba must be awarded her post-offer costs and fees in accordance with FRCP 68.

## IV. FRCP 41(A)(1) CANNOT FUNCTION AS AN AUTOMATIC BAR TO ATTORNEYS' FEES

In *Buckhannon*, the Court assuaged fears that departure from the catalyst theory may permit defendants to "unilaterally moot[] an action before judgment in an effort to avoid an award of attorney's fees" by explaining that a court would still retain the ability to determine whether the defendant had acted illegally or owed the plaintiff damages, if any were pled. 532 U.S. at 608-09. Thus, "a defendant's change in conduct will not moot the case." *Id.*

That is not the case with a Rule 41(a)(1) dismissal. Therefore, under current precedent, a copyright infringement plaintiff can unilaterally moot an action solely for the purpose of avoiding an adverse award of costs and fees. That is clearly an unjust and absurd result and it must not be permitted to stand.

There is an insurmountable legal hurdle to Criminal's claim to be able to unilaterally and absolutely preclude an entire category of litigants from being eligible for attorneys' fees: the Rules Enabling Act.

36

Attorneys' fees are generally not recoverable under the American Rule. Thus, when an award of attorneys' fees is authorized by statute, it must be considered a substantive right conferred to a litigant by the legislature. *See*, *e.g., Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 260, n.31, 95 S. Ct. 1612, 1623 (1975) (*citing* 6 J. Moore, Federal Practice 54.77(2), pp. 1712—1713 (2d ed. 1974)). Since an attorneys' fee award is a substantive right, logic dictates that the ability to seek that award is similarly substantive. 17 U.S.C. § 505, therefore, is a substantive right created by statues. This is confirmed by the Supreme Court. *Kirtsaeng*, 136 S. Ct. at 1982.

The Rules Enabling Act expressly prohibits procedural rules from abridging or modifying any substantive right. *See* 28 U.S.C. § 2072(b).

Thus, use of a judicially-created procedural rule—*i.e.* Rule 41(a)—to modify or diminish a party's access to a statutory fee award runs afoul of the Rules Enabling Act. Therefore, unilaterally using Rule 41(a)(1)—a procedural rule—to universally and absolutely foreclose defendants in copyright actions from seeking attorneys' fees under 17 U.S.C. § 505—a substantive right—violates the Rules Enabling Act and is, therefore, invalid as a usurpation of Congressional power.

To the extent that Criminal seeks to deprive Ms. Cordoba of her substantive right to pursue fees under the Copyright Act by using the Federal Rules of Civil Procedure, such actions are invalid as a matter of law under 28 U.S.C. § 2072.

37

## CONCLUSION

For the foregoing reasons, Ms. Cordoba should be permitted to recover costs and fees permitted under the Copyright Act and the judgment of the district court should be *affirmed*.


Date: April 3, 2019.


REID RUBINSTEIN & BOGATZ


*/s/ Kerry E. Kleiman, Esq.*
Kerry E. Kleiman, Esq.

*Attorneys for Appellee, Tracy Cordoba*

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, the undersigned attorney certifies that to the best of her knowledge, there are no other related cases currently pending in this Court.

Date: April 8, 2019.

REID RUBINSTEIN & BOGATZ

*/s/ Kerry E. Kleiman, Esq.*
Kerry E. Kleiman, Esq.

*Attorneys for Appellee, Tracy Cordoba*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,844 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word for Office 365 Times New Roman 14-point font.

Date: April 3, 2019.

REID RUBINSTEIN & BOGATZ

*/s/ Kerry E. Kleiman, Esq.*
Kerry E. Kleiman, Esq.

*Attorneys for Appellee, Tracy Cordoba*

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: April 3, 2019.

REID RUBINSTEIN & BOGATZ

*/s/ Kerry E. Kleiman, Esq.*
Kerry E. Kleiman, Esq.

*Attorneys for Appellee, Tracy Cordoba*